**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **IRENE FERRUCCIO,** **Plaintiff,** | : | |
| **v.** | : | **C.A. No. 06-154S** |
| **CHERRY HILL MANOR, ET AL.,** **Defendants.** | : | |

**PLAINTIFF'S REPLY TO DEFENDANT'S OBJECTION TO PLAINTIFF'S MOTION TO REMAND**

Now comes Plaintiff, Irene Ferruccio ("Plaintiff"), and submits the following response to Defendant's Objection to Plaintiff's Motion to Remand.

*A. Amount-in-Controversy*

At the outset, Plaintiff iterates that the burden of establishing the amount-in-controversy sits with the Defendant. Accordingly, Defendant must present specific factual information in support of its claim that the amount-in-controversy exceeds $75,000. Despite the fact that it is not her burden, Plaintiff offered her own specific factual evidence showing the amount-in-controversy does not exceed $75,000. Since her lost wages are only approximately $32,480,[1] it is highly unlikely that even if a jury awarded

[1]In addition, Plaintiff presumes that Defendant will argue that TDI and unemployment are offsets to this amount. Therefore, the actual amount of lost wages are potentially less than $32,480.

compensatory and punitive damages,[2] and even considering attorneys fees, the amount would exceed $75,000 - - approximately twice the amount of the lost wages. The fact that Plaintiff has not signed a stipulation prepared by Defendant is not relevant in determining whether the jurisdictional prerequisite has actually been met. There are multiple reasons why a stipulation does not make sense here. Most importantly, the scope of Defendant's proposed affidavit/stipulation was far too broad. Defendant's proposed stipulation and affidavit required the Plaintiff not only to aver that the total recovery sought was less than $75,000, but also that she would not accept any amount in excess of $75,000 if awarded by a jury. See Exhibit H (submitted in support of Plaintiff's Motion for Remand). Furthermore, Life Care required that Plaintiff aver that she would not amend her complaint in the future. By comparison, had Defendant asked Plaintiff to sign a stipulation that the recovery sought, at this time, did not exceed $75,000 (or even come close to it), Plaintiff would have happily done so.[3]

Life Care has presented a single case to demonstrate that Plaintiff's claims could possibly exceed $75,000. However, the case presented is totally inapposite. First, Shoucair is not an age-discrimination case. Instead, it was a race-based hostile work environment claim which involved severe and pervasive offensive comments, as well as a tenure denial and retaliation. The employee in that case had an extremely difficult time

---

[2]One must also consider the likelihood that punitive damages would not even be awarded by a jury.

[3]In addition, when Plaintiff's counsel asked defense counsel to stipulate that the claim was not worth less than $75,000 (to challenge defendant's claim the amount-in-controversy had been met) he refused.

securing comparable employment after leaving Brown University. The large compensatory and punitive damage awards corresponded to the lost wages which were about $400,000, and addressed the highly offensive nature of the harassment. In a case in which lost wages are $32,480, and the period of unemployment is only about seven months, one cannot expect a similar award. Cf., e.g., Adams v. Uno Restaurants, Inc., 794 A.2d 489 (R.I. 2002) (affirming $7,500 award in wrongful termination case); Brown University v. Rhode Island Commission for Human Rights, 2001 R.I. Super. Lexis 21 (affirming $15,000 award in sex discrimination case)

*B. Diversity*

Life Care also asserts the Antonucci check stub issued by Cherry Hill Manor Nursing Home is simply the business name under which Life Care operates. However, Life Care has asserted the d/b/a is Cherry Hill Manor - - not Cherry Hill Nursing (which instead, is the name of the supposed "unrelated entity"). Life Care has also presented the purchase and sale agreement between Cherry Hill Nursing and Cherry Hill Medical Investors, not Life Care. Life Care admits that Cherry Hill Investors is not actually Life Care, but another "entity." When Life Care presented this agreement to Plaintiff's counsel, Plaintiff's counsel still had reservations for the reasons stated in the initial memorandum. For example, what if Life Care went out of business and the Rhode Island defendants were still a viable source of liability? That is why Plaintiff's counsel asked defense counsel for anything from Mitson and Cherry Hill itself affirming Life Care's assertions. To this date, Life Care has still not secured an affidavit from the Rhode Island

defendants. Because the Rhode Island parties are still viable, there is no diversity and this matter must be remanded.

Plaintiff,
By her attorneys,

Patricia E. Andrews, #4321
Carly Beauvais Iafrate, #6343
129 Dyer Street
Providence, RI 02903
(401) 421-0966
(401) 421-0964 (fax)

## CERTIFICATION

I hereby certify that a copy of the within document has been sent by first-class mail on the 23rd day of May 2006, to Anthony DiOrio, Esq., Jackson Lewis, LLP, One N. Broadway, White Plains, NY 10601 and Christopher J. Campbell, Esq., Jackson Lewis, LLP, 75 Park Place, Boston, MA 02116.